# FIRE PROOF STORAGE COMPANY v. ST. PAUL BETHEL ASSOCIATION.[1]

May 31, 1912.

Nos. 17,519—(71).

**Party wall — notice to innocent purchaser.**
   A four-story building was erected. A few years thereafter the owner of the same and of the adjoining lot in the rear thereof built a large building on such lot, but constructed no additional wall next to the first-named building. Instead he obtained support for floors and roof by sinking holes some four inches deep into the wall already there. He then formed a corporation, himself being the principal stockholder, and deeded the last-erected building and ground, and also the rear one-half of the rear wall of the building first erected, to such corporation. He then added three more stories to the building first erected and mortgaged the same, warranting the title to the whole thereof; no actual knowledge being had by the mortgagee of the deed to the corporation of any part of the wall, and the deed not being

[1] Reported in 136 N. W. 407.

recorded. *Held,* that there was no such possession of the wall by the corporation as to give notice to an innocent purchaser of its unrecorded deed.

**Adverse possession — evidence.**

The evidence sustains the finding that the defendant and its predecessors in interest had been in continuous, actual, open, hostile, and adverse possession of the premises in dispute for more than fifteen years prior to the commencement of the action.

Action in the district court for Ramsey county to determine the adverse claim of defendant to certain real property. The reply denied the defendants, its predecessors or grantors had been in the actual, open, notorious or exclusive possession of the property for more than fifteen years. The case was tried before Orr, J., who made findings and as conclusion of law ordered judgment in favor of defendant. From the judgment entered pursuant to the findings, plaintiff appealed. Affirmed.

*Walter L. Chapin,* for appellant.

*John F. Fitzpatrick,* for respondent.

Holt, J.

Plaintiff brought this action for the purpose of determining the adverse claim of defendant to the easterly one-half of the rear or easterly wall of defendant's building and the ground on which said half of the wall is situate. The defendant alleged ownership, and also that it had, by itself and predecessors in interest, been in actual, exclusive and adverse possession, under claim of ownership, for more than fifteen years. The court found that the defendant was the owner, and that the defense of adverse possession was true.

For some time before 1870, William F. Davidson owned the southerly 85 feet of lots 7 and 8, in block 23, St. Paul proper. Lot 8 is next to Wabasha street, and lot 7 lies east of lot 8; each lot being 50 feet wide. While such owner, he erected, prior to said year, a four-story stone building thereon, the rear or easterly wall of which was built up to the easterly boundary line of lot 7, and is the wall involved in this litigation. This building will be herein referred to as the Bethel building. Located east of lot 7, said Davidson owned

a plot of ground 125 feet by 82.38 feet. Upon this plot, in 1883, he built an opera house. When this was done, no new wall was built where it came against the easterly wall of the Bethel building, except this: That the rafters or joists for the galleries and roof were sunk into the wall, and also studdings were placed on the wall to support a part of the roof of the opera house, which projected higher than the four stories. The spaces between the studding were filled with brick. Ingress to and egress from the opera house was through the Bethel building, the lower floor of which also contained the box office of the theater. After the opera house was built, Davidson, for several months, conducted it as a place of amusement. Then he formed a corporation, called the St. Paul Opera House Company, the great bulk of the stock being held by him, and deeded the opera house to the corporation; the description being by metes and bounds, and including one-half of the rear wall of the Bethel building. This deed was dated April 1, 1884, and recorded July 18, 1887. In 1885 W. F. Davidson added three more stories to the Bethel building, and then, on July 28, 1886, gave a mortgage on the south 85 feet of said lots 7 and 8, upon which the building was located, to the Northwestern Mutual Life Insurance Company to secure a loan of $70,000. This mortgage was recorded August 7, 1886, or more than eleven months before the record of the deed, above mentioned, from Davidson to the Opera House Company. In the spring of 1887, W. F. Davidson died. In 1889 the opera house building burned. It was never rebuilt. After the fire, the heirs of W. F. Davidson cut holes for windows in the rear wall of the Bethel building, letting in air and light to each of the stories thereof, and the building has ever since been so used and occupied. After W. F. Davidson's death, his son, Edward E. Davidson, appears to have been in possession of the Bethel building, and by final decree of the probate court the same and all the stock of W. F. Davidson in the opera house corporation, and all the notes given by the parties who ever bought any of the stock, were assigned to his son. It appears that these stockholders, who had thus purchased stock by giving their notes, turned back to E. E. Davidson their stock, and were given back the notes, so that he became the owner of all the shares of stock ever issued by the corpora-

118 M.—4.

tion, except two shares, one of which was nominally held by one of the executors, and one by his attorney, in order that the corporation might have the requisite number of officers. In 1897 an action was begun by the mortgagee to foreclose this mortgage, dated July 28, 1886, for $70,000. Edward E. Davidson, his wife, and the heirs of W. F. Davidson were made defendants and appeared by attorney. A decree was entered, a sale made thereunder, and the sale confirmed. When the period of redemption expired, Edward E. Davidson, or his guardian, turned over possession of the property to the purchaser at the sale. Such purchaser and its successors in interest, this defendant, have ever since been in the exclusive possession of the property.

It further appears that the directors of the opera house corporation held corporate meetings till 1891, none in 1892, one in 1893, then none till November, 1903. In 1908, Watson P. Davidson, one of the parties to the mortgage foreclosure suit, negotiated with Julia P. Davidson, wife and guardian of Edward E. Davidson, for the purchase from the St. Paul Opera House Company of this wall here in controversy, and obtained the deed from the corporation thereto. By a deed from Watson P. Davidson, plaintiff claims title to the easterly half of the easterly, or rear, wall of the Bethel building.

It hardly requires more than a statement of the above facts to demonstrate that the trial court was justified in holding the ownership and title of the defendant to the whole rear wall of the Bethel building, situate on said lot 7, superior to that of plaintiff. W. F. Davidson, from all the evidence, was the one who virtually formed, owned, and controlled the corporation, the St. Paul Opera House Company. True he gave the deed in exchange for the stock he received and a note of the corporation for $13,500. As long as he lived, this deed was not put on record. No change was noticed in Davidson's direction of matters when the corporation succeeded to the business. It was carried on the same as before. Davidson made use of this wall the same as if the corporation had no rights there, in that he carried it up its full width three additional stories, then gave the mortgage in question. The claim made by the plaintiff is

that, because the opera house corporation operated a business on the other side of the wall, and a close examination of the buildings would have disclosed that there was no wall to support the galleries and roof of the opera house on lot 6, which adjoined lot 7 on the east, but instead the ends of the joists of the gallery floors were sunk four inches into the rear wall of the Bethel building, and originally some studding supporting the roof of the opera house rested on the wall at the fourth story of the Bethel building, therefore the mortgagee must be held to have had notice that the opera house corporation was in possession of the wall, and an inquiry should have been made, which would have disclosed its rights.

From a practical standpoint, it is difficult to say that the situation, as seen by a person at the time this mortgage was taken, disclosed any possession at all in the wall, except the openings therein to the opera house, and such possession as the corporation had of the lower story in the Bethel building. But such visible possession is not claimed to have been any other than as licensee or tenant. A person examining outside appearances would have noticed the seven-story Bethel building, two and partly three stories higher than the opera house behind it, the rear wall of the former carried to the top in a straight line, with nothing to indicate that the opera house had any support for either roof or floor galleries in that wall. An examination of the inside of either building would not be likely to give any better information of any possession by the opera house corporation in this wall. The record title to the whole tract on which both buildings were situate stood at this time in W. F. Davidson; ostensibly he was in charge and control of both. He gives this $70,000 mortgage on the Bethel building, including the whole of this wall, warranting the title; he has previously given a deed to the east or rear half of the wall and the land on which it stands to a corporation which he practically owns. That is, he has thirty-five hundred shares of its stock and its $13,500 note as payment for the Opera House building and ground. The corporation had issued no other stock, except two hundred thirty shares to some persons necessary to carry on the corporation and the business. These persons never paid for any part there-

of, but had given their promissory notes, aggregating $11,500, for this stock, so that we may say that W. F. Davidson was really the sole owner of the opera house corporation. Under this situation, no great effort ought to be made to distinguish between the possession of W. F. Davidson and the Opera House Company, except in the interest of justice and fair dealing. And so doing we may say that there was nothing in the situation which warranted a finding that the opera house corporation was in possession of the wall, so as to give notice of its unrecorded deed to the mortgagee, the Northwestern Mutual Life Insurance Company, on July 28, 1886.

We are also satisfied that the court's finding that defendant and its predecessors in interest had, for more than fifteen years next preceding the commencement of the action, been in continuous, open, exclusive, hostile, and adverse possession of the property is sustained by the evidence. As already stated, W. F. Davidson himself utilized the whole rear wall of the Bethel building in adding the three stories thereto. After the opera house burned, his son, E. E. Davidson, took possession of the whole rear wall by piercing four to six openings at each of the lower four stories and inserting windows therein for the use of the tenants in the building. This certainly was not in the interest of the corporation, but solely for his own, as owner of the Bethel building. His whole occupancy, and that of his guardian, indicates that it was under claim of exclusive personal ownership and title, and not as occupying any part of it for or in behalf of the corporation. All the proceedings in his father's estate, and in his own under guardianship, recognize no rights whatever of the corporation in or to any part of the wall.

The findings of fact being abundantly sustained, the result is that the judgment must be affirmed.

Affirmed.